[Crim. No. 20108. Second Dist., Div. Four. Feb. 17, 1972.]

In re RICHARD D., a Person Coming Under the Juvenile Court Law.
KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
RICHARD D., Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KINGSLEY, J.**—Richard D., a minor, appeals[1] from an order of the superior court in a juvenile proceeding under section 602 of the Welfare and Institutions Code,[2] declaring him a ward of the court and committing him to a camp program.[3] Subsequent to the filing of this appeal, the juvenile court entered an order reading as follows: "Camp Community Placement Order Terminated. Case Dismissed." Based on that order, the Attorney General has asked us to dismiss the appeal. For the reasons set forth below, we deny that motion and affirm the order.

### I

We know of no provision in the Juvenile Court Act for the "dismissal" of a section 602 proceeding after a finding of wardship has been made and entered, a disposition hearing held, and rehabilitative disposition order made. The Attorney General cites to us the decision in *In re W. R. W.* (1971) 17 Cal.App.3d 1029 [95 Cal.Rptr. 354]. But in that case the "dismissal" was ordered at the disposition hearing and the case stands only for the proposition that "dismissal" is a proper method of disposition of a section 602 case even though that mode of disposition is not listed in section 725. Here the disposition order was that the custody of the minor be taken from his parents and that he be "placed in the care, custody, and control of the Probation Officer for placement in the camp program." We treat the so-called "dismissal" in the case at bench as being an order of "termination" under section 778.[4]

In *In re Katherine R.* (1970) 6 Cal.App.3d 354 [86 Cal.Rptr. 281], the appellate court dismissed an appeal from an order for supervision, made under section 601. But in that case the appeal had attacked only the re-

---

[1]The notice of appeal was filed 61 days after the referee's order would have become final had no rehearing been ordered by the juvenile judge. However, the judge, in response to a petition for rehearing, had ordered the preparation of a transcript and ultimately had denied a rehearing within 20 days after that transcript was received. The notice of appeal was filed within 60 days after the judge's order. Under the interpretation of the appeal section in *In re J. R.* (1970) 5 Cal.App.3d 597 [85 Cal.Rptr. 396], the appeal was timely.

[2]All statutory references hereinafter are to the Welfare and Institutions Code unless otherwise indicated.

[3]The order reads that the minor "is and remains" a ward under section 602. From this we infer that some previous and unterminated wardship order was then in force. We treat the instant appeal as being from the final order based on the incident hereinafter discussed.

[4]The augmented record before us contains only the order of "dismissal." Since no attack on the validity of that order is here made, we assume that the procedural requirements of section 778 were met.

straint on the minor's liberty resulting from the supervision order; it did not, as here, attack a finding of criminality. The language of *Katherine R.*, itself, indicates that the termination of a 602 proceeding, after a finding of wardship, would not render the appeal moot.[5]

The motion to dismiss the appeal is denied.

## II

█ Counsel for the minor points out that, prior to the jurisdictional hearing, the juvenile court held a detention hearing. It is unnecessary for the disposition of this case to recite the procedures there used, except to comment that the record shows an obdurate refusal to follow the procedural requirements set forth by the Supreme Court in *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737], and that the procedures clearly were defective in the respects pointed out (after the hearings in the case at bench) in *In re Dennis H.* (1971) 19 Cal.App.3d 350 [96 Cal.Rptr. 791].

However, nothing in the Juvenile Court Act makes a valid (or any) detention hearing a jurisdictional requirement for valid jurisdictional and disposition hearings. The earlier detention has become moot and the errors, even if jurisdictional, at the detention hearing cannot be urged on an appeal from the ultimate wardship orders.

## III

█ It is earnestly urged that the evidence does not support the finding that the minor had knowing possession of marijuana, as alleged in the petition[6] before the juvenile court. We disagree. While the minor and his companion told a story which exonerated them from the charge, the officer testified to circumstances from which the referee and the judge reasonably could infer guilt. The officer, on official duty, saw two youths pushing an apparently inoperable motorcycle. When he approached them to investigate that activity, he saw that Richard was carrying a brown paper sack. As the officer drew close, Richard ran away, returning shortly thereafter empty-handed. The officer went in the direction that Richard had taken and found, on a bench back of a business establishment,[7] a brown paper sack

---

[5]"Were the order making the minor a ward of the juvenile court predicated upon a finding that she had committed a criminal act, we would be inclined to agree with appellants that the minor should be given the same right as an adult, to clear her name." (*In re Katherine R., supra* (1970) 6 Cal.App.3d 354, 357.)

[6]There were two petitions filed against Richard; both were based on the same incident. One was dismissed prior to hearing and the order herein under review was based on the second petition.

[7]Nothing in the record suggests that the officer's search violated the rights of the property owners involved.

containing marijuana. Although it was raining and the area around the sack was wet, the sack was dry. This evidence supports the inference that the sack found by the officer was the one previously carried by Richard and that Richard's rapid disappearance when the officer approached indicated guilty knowledge by him of its contents.

The order is affirmed.

Files, P. J., and Dunn, J., concurred.